```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Veronica E. Moffitt

    v.                                    Civil No. 17-cv-280-JL
                                            Opinion No. 2018 DNH 177
Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Veronica Moffitt moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ") is affirmed.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing. The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

1

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 17, is part of the court's record and will be summarized here, rather than repeated in full.

Moffitt first applied for DIB and SSI in May of 2012, claiming that since August 6, 2010, she had been disabled by a bad back, depression, anxiety, and carpal tunnel syndrome ("CTS"). Her applications were denied, and after a hearing in December of 2013, an ALJ issued an unfavorable decision. The Appeals Council remanded the case for another hearing, which Moffitt received in March of 2016. Among other things, the

remand order directed the ALJ to obtain evidence from a vocational expert ("VE"). After Moffitt's second hearing, at which a VE testified, the ALJ issued a second unfavorable decision, which is the subject of this appeal.

At the time of Moffitt's second unfavorable decision, she was 42 years old. She had a high school education and had taken some on-line college courses. She had past work experience as a machine operator, as a visual inspector/material handler, and as a cashier. She has been diagnosed with several physical ailments including the one that is the subject of one of her two claims in this appeal, carpal tunnel syndrome. For that condition, Moffitt had surgery on her right wrist in July of 2013. Medical findings related to Moffitt's CTS have generally been described as "mild."

The record includes a single medical opinion concerning Moffitt's physical residual functional capacity ("RFC").[1] In August of 2012, a non-examining state-agency consultant, Dr. Hugh Fairley, opined that Moffitt had an unlimited capacity for three of four manipulative activities, reaching, fingering, and feeling, but was limited in her capacity for handling (gross manipulation), and he stated that she should "[a]void frequent

---

[1] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

4

bil[ateral] wrist manipulation." Administrative Transcript (hereinafter "Tr.") 98, 109.

In February of 2014, an occupational therapist, Joan Van Saun, saw Moffitt and wrote a Functional Capacity Evaluation ("FCE"). Van Saun's FCE includes the following statements relevant to the limitations imposed by Moffitt's CTS:

> Regarding work capacity, it is difficult to predict with accuracy work capacity of a patient with this profile, i.e. primarily subjective pain reports, some inconsistencies on testing . . . .
>
> She does have diagnosed bilateral midcarpal instability and history of carpal tunnel syndrome, so it would be reasonable that she would not be able to perform jobs that required constant handling, such as her job as an assembly person did. . . .
>
> She would probably be capable of work at Sedentary or Sedentary-Light physical demand level job as long as jobs did not require constant use of her hands and as long as work that was required was limited to light handling or fine motor work on up to frequent basis . . . .

Tr. 1333.

As noted, the ALJ heard testimony from a VE at Moffitt's second hearing. The ALJ began by asking the VE a hypothetical question that posited a 42-year-old individual who had taken some on-line college courses, had Moffitt's work history, and had no limitations on reaching, handling, fingering, and feeling. The VE testified that such a person could perform Moffitt's past work: (1) as a machine operator, as she had performed it, but not as that job is classified in the

5

Dictionary of Occupational Titles; (2) as an inspector, as that job is generally performed, but not as she had performed it; and (3) as a cashier. The VE further testified that the person described in the ALJ's first hypothetical could perform the jobs of parts cleaner, retail marker, and laundry worker. Then the ALJ added an additional limitation to his first hypothetical, i.e., a requirement that the person "should avoid frequent bilateral wrist manipulation," Tr. 58. The VE testified that a person with that additional limitation could perform the jobs of order caller, gate attendant, and ticket taker.

After the hearing, the ALJ issued a decision in which he discussed Moffitt's CTS at some length, but determined that it was not a severe impairment, i.e., one that "significantly limits [her] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c) & 416.920(c).[2] He then assessed Moffitt as having an RFC that included no manipulative limitations and determined that she was capable of performing her past work as a machine operator, as an inspector, and as a cashier. Finally, he determined that if Moffitt needed to avoid frequent bilateral wrist manipulation, which was the manipulative limitation in Dr. Fairley's RFC assessment, she

---

[2] The ALJ did, however, determine that Moffitt had two severe impairments, obesity and degenerative disc disease.

6

would retain the RFC to perform the jobs of order caller, gate attendant, and ticket taker.

**III. Discussion**

    A.  <u>The Legal Framework</u>

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. § 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether substantial evidence supports the ALJ's determination that Moffitt was not under a disability from August 6, 2010, through the date of his decision, May 4, 2016.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step sequential evaluation process. <u>See</u> 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform

7

past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Moffitt's Claims

Moffitt claims that the ALJ erred in assessing her RFC by: (1) failing to properly consider the combined effect of her medically determinable impairments; and (2) erroneously evaluating the testimony she gave regarding her symptoms and limitations. Neither claim is persuasive

1. Combined Effect

The gravamen of Moffitt's first claim is somewhat difficult to discern. She begins by invoking a regulation that required the ALJ to consider the combined effect of all of her physical impairments, both severe and non-severe. See 20 C.F.R. §§ 404.1523 & 416.923. But thereafter, she challenges the underpinnings of the ALJ's step-two determination that her CTS was not a severe impairment and also challenges the ALJ's formulation of an RFC that included no manipulative limitations. She concludes her claim by stating that "[t]he ALJ's error is not harmless because the ALJ queried the vocational expert only about the impact of a limitation to 'occasional bilateral wrist manipulation', rather than any more general limitation in her handling and/or fingering abilities, as the evidence supports." Cl.'s Mem. of Law (doc. no. 12-1) 5-6.

As to the gravity of the ALJ's purported error(s), claimant is mistaken; any of the errors she charges the ALJ with making in her first claim, had he made them, would have been harmless. First of all, if the ALJ erred in determining that Moffitt's CTS was not a severe impairment, that error would have been harmless because the ALJ found two other impairments to be severe, continued the sequential evaluation past step two, and considered the effects of her CTS when formulating her RFC. See Black v. Acting Comm'r, Soc. Sec. Admin., No. 17-cv-350-JD, 2018

9

WL 2002484, at *5 (D.N.H. Apr. 30, 2018) (citing Garneau v. Berryhill, No. 16-cv-448-SM, 2017 WL 4512160, at *7 (D.N.H. Oct. 10, 2017)). Second, even if the ALJ erred by failing to include a manipulative limitation in Moffitt's RFC, that error would have been harmless because he posed a hypothetical question to the VE that incorporated Dr. Fairley's manipulative limitation, and the VE testified that there were jobs that could be performed by a person with that additional limitation.

Finally, Moffitt's suggestion that the ALJ should have asked the VE a hypothetical question that included a more profound limitation on handling and/or fingering than the one he posited is baseless. That is because the limitation the ALJ included in his second hypothetical is the most severe manipulative limitation for which there is adequate support in the record. It is well established

> that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record [and] when assessing a claimant's RFC, the general rule is that an expert is needed to assess the extent of functional loss.

Ouellette v. Berryhill, No. 17-cv-409-SM, 2018 WL 3031855, at *5 (D.N.H. June 19, 2018) (quoting Jabre v. Astrue, No. 11–cv-332-JL, 2012 WL 1216260, at *8 (D.N.H. Apr. 5, 2012) (citations and internal punctuation omitted), R. & R. adopted by 2012 WL 1205866 (Apr. 9, 2012)). Here, no expert ever opined that

10

Moffitt had a manipulative limitation more severe than the one the ALJ included in his second hypothetical question to the ALJ.

The only acceptable medical source who provided an opinion on Moffitt's physical RFC was Dr. Fairley. To be sure, Joan Van Saun provided a Functional Capacity Assessment, but she is an occupational therapist, and under the Social Security regulations, that does not qualify her as either an acceptable medical source or as a medical source of any kind. See 20 C.F.R. § 404.1502(a) & (d); § 416.902(a) & (d). Thus, even if the manipulative limitations that Van Saun assessed are more severe than those that Dr. Fairley assessed -- and it is not so clear that they are -- the ALJ was not permitted to base his RFC assessment on Van Saun's FCE because she is not an acceptable medical source.

In short, because the ALJ continued past step two in the sequential evaluation process and because the VE testified that there were jobs that could be performed by a person with the most severe manipulative limitation for which there is support in the record from an acceptable medical source, Moffitt's first claim provides no valid basis for reversing the ALJ's decision and remanding this case.

### 2. Symptoms and Limitations

Moffitt's second claim is that when the ALJ assessed her RFC, he erroneously evaluated her testimony regarding her

symptoms and limitations.  Specifically, she argues that the
ALJ: (1) disregarded her testimony solely because it was not
substantiated by objective medical evidence; and (2) discounted
her testimony based upon inconsistencies in the statements she
had made to treatment providers at different times.  There are
several problems with Moffitt's claims, but before turning to
them, the court will briefly outline the applicable legal
principles.

    Moffitt correctly points out that the Acting Commissioner
of Social Security recently replaced Social Security Ruling
("SSR") 96-7p, which focusses on the concept of credibility,
with SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016), which
moves away from the concept of credibility and reframes the
requisite analysis for evaluating a claimant's statements of
symptoms.

    SSR 16-3p begins by stating that under SSA regulations, "an
individual's statements of symptoms alone are not enough to
establish the existence of a physical or mental impairment or
disability," 2016 WL 1119029, at *2, and goes on to say that "if
an individual alleges impairment-related symptoms, we must
evaluate those symptoms using a two-step process set forth in
our regulations [i.e., 20 C.F.R. §§ 404.1529 & 416.929]," id.
These are the two steps:

> First, we must consider whether there is an underlying
> medically determinable physical or mental
> impairment(s) that could reasonably be expected to
> produce an individual's symptoms, such as pain.
> Second, once an underlying physical or mental
> impairment(s) that could reasonably be expected to
> produce an individual's symptoms is established, we
> evaluate the intensity and persistence of those
> symptoms to determine the extent to which the symptoms
> limit an individual's ability to perform work-related
> activities . . . .

Id. With regard to the second step, SSR 16-3p provides, in pertinent part:

> [O]bjective medical evidence is a useful indicator to
> help make reasonable conclusions about the intensity
> and persistence of symptoms, including the effects
> those symptoms may have on the ability to perform
> work-related activities . . . .
>
> . . . .
>
> However, we will not disregard an individual's
> statements about the intensity, persistence, and
> limiting effects of symptoms solely because the
> objective medical evidence does not substantiate the
> degree of impairment-related symptoms alleged by the
> individual.

Id. at *4-5.

As noted, Moffitt claims that the ALJ erred by disregarding her statements of symptoms solely because they were not substantiated by the objective medical evidence. In so doing, she quotes a passage from the ALJ's decision in which he "note[d] several instances 'in the claimant's medical records indicating that her alleged symptoms and limitations are inconsistent with her activities and medical findings,'" Cl.'s

13

Mem. of Law (doc. no. 12-1) 7 (quoting Tr. 30) (emphasis added). In other words, the very passage on which Moffitt relies for the proposition that the ALJ relied <u>solely</u> upon a lack of substantiation from objective medical evidence to disregard her statements of symptoms demonstrates that the ALJ <u>also</u> relied upon a lack of substantiation from information about her activities to discount those statements. And indeed, SSR 16-3p identifies a claimant's "[d]aily activities" as a factor to consider when evaluating a claimant's statements about her symptoms. 2016 WL 1119029, at *7. In all, the first part of Moffitt's claim gives the court no reason to reverse the ALJ's decision.

The second part of Moffitt's claim is also unavailing. She asserts that the ALJ erred by determining that her statements of symptoms were suspect because they were inconsistent with each other over the course of time. While SSR 16-3p cautions against putting too much stock in such inconsistencies in a claimant's statements because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time," 2016 WL 1119029, at *8, the ALJ did not do what SSR 16-3p cautions against. The court has carefully read the ALJ's decision, and while it makes several references to inconsistencies, <u>see</u> Tr. 30-33, the ALJ refers to inconsistencies between Moffitt's statements and the objective

14

medical evidence and to inconsistencies between her statements and her activities, but never once does he discount her statements because they were inconsistent with each other over the course of time.  Accordingly, the second part of Moffitt's argument gives the court no reason to reverse the ALJ's decision.

To sum up, Moffitt has identified nothing in the ALJ's decision that violate the precepts of SSR 16-3p.

**IV. Conclusion**

Because the ALJ has committed neither a legal nor a factual error in evaluating Moffitt's claim, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision[1] is denied, and the Acting Commissioner's motion for an order affirming her decision[2] is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 5, 2018

cc:  D. Lance Tillinghast, Esq.
     Terry L. Ollila, AUSA

---

[1] Doc. no. 12.

[2] Doc no. 16.